**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF INDIANA**

IOM HEALTH SYSTEM, LP, d/b/a Lutheran Hospital of Indiana; ST. JOSEPH HEALTH SYSTEM, LLC, d/b/a St. Joseph Hospital; WARSAW HEALTH SYSTEM, LLC, d/b/a Kosciusko Community Hospital; BLUFFTON HEALTH SYSTEM, LLC, d/b/a Bluffton Regional Medical Center; REHAB HOSPITAL OF FORT WAYNE, GP, d/b/a Rehabilitation Hospital of Fort Wayne; PORTER HOSPITAL LLC, d/b/a Porter Regional Hospital; LUTHERAN MUSCULOSKELETAL CENTER, LLC, d/b/a The Orthopaedic Hospital of Lutheran Health Network; DUKES HEALTH SYSTEM, LLC, d/b/a Dukes Memorial Hospital; LA PORTE HOSPITAL COMPANY, LLC, d/b/a La Porte Hospital and Starke Hospital; and DUPONT HOSPITAL, LLC, d/b/a Dupont Hospital,

*Plaintiffs,*

v.

ANTHEM INSURANCE COMPANY, INC., d/b/a ANTHEM BLUE CROSS AND BLUE SHIELD,

*Defendant,*

CASE NO. 1:22-MC-00023

**PETITION FOR CONFIRMATION OF FINAL ARBITRATION AWARD**
**AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT OF PETITION**

Plaintiffs, IOM HEALTH SYSTEM, LP, d/b/a Lutheran Hospital of Indiana; ST. JOSEPH HEALTH SYSTEM, LLC, d/b/a St. Joseph Hospital; WARSAW HEALTH SYSTEM, LLC, d/b/a Kosciusko Community Hospital; BLUFFTON HEALTH SYSTEM, LLC, d/b/a Bluffton Regional Medical Center; REHAB HOSPITAL OF FORT WAYNE, GP, d/b/a Rehabilitation Hospital of Fort Wayne; PORTER HOSPITAL LLC, d/b/a Porter Regional Hospital; LUTHERAN

MUSCULOSKELETAL CENTER, LLC, d/b/a The Orthopaedic Hospital of Lutheran Health Network; DUKES HEALTH SYSTEM, LLC, d/b/a Dukes Memorial Hospital; LA PORTE HOSPITAL COMPANY, LLC, d/b/a La Porte Hospital and Starke Hospital; and DUPONT HOSPITAL, LLC, d/b/a Dupont Hospital ("Hospitals"), by and through undersigned counsel, and pursuant to Section 9 of the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*, respectfully petition this Court for entry of an order confirming and reducing to a final judgment the Final Award of Arbitrator, attached hereto as **Exhibit 1**, issued in favor of the Hospitals and against Defendant Anthem Insurance Company, Inc. ("Anthem") in that certain arbitration proceeding before the American Arbitration Association, styled *IOM Health System, LP, d/b/a Lutheran Hospital of Indiana, et. al, Claimants v. Anthem Insurance Company, Inc., Respondent,* Case No. 01-19-0003-4431 ("Arbitration"). The grounds for this Petition are set forth in the supporting memorandum of law incorporated hereinbelow.

## MEMORANDUM OF LAW

### INTRODUCTION

This case arises from Anthem's violation of federal law and, consequently, its breach of its agreements with the Hospitals to reimburse them for emergency department (ED) services at the agreed rates between the parties. Notwithstanding the clear provision of federal law which prohibits health insurers like Anthem from "limit[ing] what constitutes an emergency medical condition . . . on the basis of lists of diagnoses or symptoms," *see* 42 C.F.R. § 438.114(d)(1)(i), Anthem instituted a policy of automatically denying the Hospitals' claims for ED services provided to Anthem's members based on a unilaterally created list of purportedly "emergent" diagnosis codes (the "ED Policy"). This violated the plain requirements of federal law and, by extension, the parties' agreements, which incorporate federal law.

In response to Anthem's unlawful conduct, the Hospitals initiated the Arbitration against Anthem seeking damages, declaratory relief, and injunctive relief. Anthem filed a counterclaim, seeking declaratory relief. After an eight-day evidentiary hearing, the Arbitrator found in favor of the Hospitals and issued an Interim Award on October 21, 2021. The Arbitrator concluded that Anthem's use of a list of diagnosis codes to deny or downcode the Hospitals' claims for emergency services was a "clear" violation of federal and state law, and therefore a violation of the parties' agreements. The Arbitrator awarded the Hospitals damages for Anthem's contractual breach in the amount of $3,742,967.68 for certain claims Anthem had improperly underpaid due to the application of its unlawful ED Policy. The Arbitrator also issued a declaratory decree that Anthem's ED Policy violated federal law and the parties' agreements, and injunctive relief (a) prohibiting Anthem from continuing to employ its unlawful ED Policy to the Hospitals' claims and (b) ordering Anthem to fully reimburse the Hospitals for additional past emergency claims that had been underpaid or denied due to Anthem's application of the ED Policy.

After issuance of the Interim Award, the Hospitals moved for an award of costs, attorneys' fees, and pre-award interest. On February 17, 2022, the Arbitrator issued a Final Award which incorporated the terms of the Interim Award in full, and which awarded the Hospitals $837,455.57 in prejudgment interest and an additional $4,962.50 in costs.[1]

[1] Notwithstanding entry of the Interim Award on October 21, 2021, which became effective immediately, and the Final Award issued on February 17, 2022, Anthem is continuing to flout the terms of the relief awarded. Although Anthem has paid $3,742,967.68 in liquidated damages and $837,455.57 in prejudgment interest for those affected claims specified in the arbitration, and $4,962.50 in costs, Anthem has not appropriately reimbursed the Hospitals for the additional affected claims that it downcoded pursuant to its ED Policy (as ordered by the Arbitrator), and it is still applying its unlawful ED Policy to deny and underpay the Hospitals' emergency services claims despite the clear prohibition in the Final Award.

The Hospitals seek this Court's confirmation of the Final Award and its reduction to a final judgment of this Court pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*

## BACKGROUND AND STATEMENT OF FACTS

### A. The Parties

Plaintiff Hospitals are a group of acute care hospitals located throughout the State of Indiana. *See* Interim Award, attached hereto as **Exhibit 2**, at 6. The Hospitals each maintain an emergency department which provides emergency medical services to any member of the public who presents and requests treatment. *Id.* Under the federal Emergency Medical Treatment and Active Labor Act, the Hospitals are required by law to provide, at a minimum, emergency medical screening and stabilization services to any person who presents at their emergency departments requesting examination or treatment, regardless of the acuity of their condition and regardless of their ability to pay. *See* 42 U.S.C. § 1395dd(a), (b).

Defendant Anthem is a large insurance company that administers, among other things, health plans for the State of Indiana's Medicaid program. Interim Award, **Ex. 2** at 6.

### B. The Parties' Agreements to Arbitrate

The Hospitals and Anthem entered into two agreements which govern their relationship—the Lutheran Agreement and the LaPorte Agreement (collectively, the "Agreements"). *Id.* at 6-7. A true and correct copy of the Lutheran Agreement is attached hereto as **Exhibit 3**. A true and correct copy of the LaPorte Agreement is attached hereto as **Exhibit 4**. The Agreements provide that the Hospitals will render healthcare services, including emergency services, to members of Anthem's health plans in the State of Indiana, and that Anthem will reimburse the Hospitals for those services at the rates set forth in the Agreements. Both Agreements expressly incorporate

federal and state law and require Anthem to comply with federal and state law in its dealings with the Hospitals. Lutheran Agreement, **Ex. 3** § 9.17; LaPorte Agreement, **Ex. 4** § 9.7.

Both Agreements also contain arbitration clauses. The Lutheran Agreement provides for resolution of disputes pursuant to the Commercial Rules of the American Arbitration Association. *See* Lutheran Agreement, **Ex. 3** § 7.2. The LaPorte Agreement provides for arbitration pursuant to the JAMS Comprehensive Arbitration Rules and Procedures. *See* LaPorte Agreement, **Ex. 4** § 7.2.

**C. Anthem's Breach and the Ensuing Arbitration**

In 2017, Anthem implemented its ED Policy whereby it began using a list of diagnosis codes to decide whether to reimburse the Hospitals at the full contracted rate for emergency services. *See* Interim Award at 12. Under the ED Policy, if the Hospitals submitted a claim for reimbursement to Anthem with a diagnosis code that matched Anthem's list of purportedly "emergent" diagnosis codes, then Anthem would pay the claim in accordance with the Agreements. *Id.* If the services provided by the Hospitals included "ancillary" services—for example, diagnostic or imaging services provided in connection with the treatment of the patient's presenting symptoms—then Anthem would also pay for those services in accordance with the Agreements. *Id.* at 13.

If, on the other hand, the Hospitals submitted a claim with a diagnosis code that did not match Anthem's list, then Anthem would deny the claim and reimburse the Hospitals with a non-emergent "triage" fee of about $50-70 for the entire course of treatment, regardless of the complexity or extent of the services provided. *Id.* at 12-14. And, if the claim did not contain a diagnosis code matching Anthem's list, Anthem would also automatically deny payment for all ancillary services provided. *Id.* at 13.

On October 29, 2019, the Hospitals filed a Demand for Arbitration ("Demand") against Anthem before the American Arbitration Association. *See* Demand for Arbitration, attached hereto as **Exhibit 5**. The Hospitals alleged that the ED Policy violated the Agreements, as well as federal law, which expressly forbids managed care organizations ("MCOs") such as Anthem from "limit[ing] what constitutes an emergency medical condition . . . on the basis of lists of diagnoses or symptoms." *See id.* ¶¶ 13-16 (*citing* 42 C.F.R. § 438.114(d)(1)(i)). Under federal law, Medicaid MCOs, such as Anthem, are required to cover and pay for treatment of emergency medical conditions without prior authorization under the "prudent layperson" standard. Federal law defines an "emergency medical condition" as a

> medical condition manifesting itself by acute symptoms of sufficient severity (including severe pain) that a ***prudent layperson***, who possesses an average knowledge of health and medicine, could reasonably expect the absence of immediate medical attention to result in the following:
>
> (i) Placing the health of the individual (or, for a pregnant woman, the health of the woman or her unborn child) in serious jeopardy.
> (ii) Serious impairment to bodily functions.
> (iii) Serious dysfunction of any bodily organ or part.

42 C.F.R. 438.114(a) (emphasis added). Thus, if a patient has symptoms that would lead a prudent layperson to believe that an emergency exists, then MCOs are required to cover and pay for the treatment that they receive at a hospital. Moreover, MCOs cannot deny coverage or reduce reimbursement simply because the patient's diagnosis did not match a list of diagnoses that the MCOs consider to be truly "emergent." *See* Medicaid Program; Medicaid Managed Care: New Provisions, 67 Fed. Reg. 40989, 41030 (Jun. 14, 2002) ("[B]ecause there is no way a list can capture every scenario that could indicate an emergency medical condition," the Centers for Medicare & Medicaid Services "prohibit the use of codes (either symptoms or final diagnosis) for denying claims[.]").

The Hospitals alleged that the Agreements specifically incorporated federal and state law and regulatory requirements and imposed an obligation on Anthem to comply with federal law in processing the Hospitals' claims for emergency services rendered to Anthem's members. *Id.* ¶ 31.

In their Demand, the Hospitals requested: (1) a declaration that the ED Policy violated federal law and breached the Agreements; (2) damages for Anthem's underpayment of their emergency services claims; and (3) injunctive relief requiring Anthem to cease applying the unlawful ED Policy to the Hospitals' emergency claims and pay, in full and in accordance with the reimbursement rates in the Agreements, all claims affected by Anthem's application of the unlawful ED Policy. *Id.* ¶¶ 33, 40. The Hospitals additionally sought all other relief as allowed by the AAA Rules and the Agreements.

After the filing of the Demand, the parties agreed that the Arbitration would be conducted in accordance with the American Arbitration Association Healthcare Payor Provider Arbitration Rules. *See* Email from N. Ortiz to S. Clayton (Dec. 17, 2019), attached hereto as **Exhibit 6**. On December 30, 2019, the AAA appointed Alan M. Kanter ("Arbitrator") as the sole neutral arbitrator in the case. *Id.*

On June 23, 2020, Anthem filed a counterclaim against the Hospitals, alleging that it was the Hospitals—not Anthem—that had breached the Agreements because the Hospitals did not submit medical records (which they were not required to do) to Anthem for every emergency claim that did not match Anthem's list of "emergent" diagnosis codes. Anthem also denied liability for the Hospitals' claims. *See* Anthem's Answering Statement, dated December 17, 2019, attached hereto as **Exhibit 7** ("Anthem's Answer").

After completion of fact and expert discovery, including document exchange and depositions, as well as the Arbitrator's resolution of numerous pre-hearing motions, the Arbitrator

held an eight-day final evidentiary hearing from April 26 to May 7, 2021. The parties thereafter submitted extensive post-hearing briefing addressing the evidence presented at the hearing and their legal arguments in support of their respective positions. Interim Award, **Ex. 2** at 2-3.

**D. The Interim Award**

On October 21, 2021, the Arbitrator issued a detailed 46-page Interim Award ruling in favor of the Hospitals on all claims and against Anthem on its counterclaim. The Arbitrator ruled that Anthem's ED Policy violated federal law, state law, and the Agreements. The Arbitrator found that the law is "crystal clear" that insurance companies like Anthem cannot use a list of diagnosis codes to determine whether a claim constitutes a true emergency medical condition, and that Anthem's ED Policy did exactly that. Interim Award, **Ex. 2** at 33. The Arbitrator likewise found that federal law prohibits insurers like Anthem from denying or downcoding ED claims without first considering "all pertinent information and documentation" on the claim forms, and that Anthem "does not do so." *Id.* at 20.

The Arbitrator elaborated:

> Under Anthem's ED Policy, [Anthem] ***unquestionably fails to process and pay claims for emergency services in accordance with the Prudent Lay Person Standard***. Rather, [Anthem] simply denies claims submitted by [the Hospitals], failing to process and pay such claims for emergency services per the Prudent Lay Person Standard. [Anthem's] partial or downcoded payment denial as to the Hospitals' claims for emergency services where such claims contain a final diagnosis code not on Anthem's Auto-list unilaterally determines to be a non-emergent diagnosis is a ***clear violation of [Anthem's] contractual and statutory obligations*** to process and pay claims for emergency services provided by [the Hospitals] based on the Prudent Lay Person Standard by ***failing to address patients' presenting symptoms*** as opposed to the patient's ultimate diagnosis prior to denying a claim.
>
> ***Federal law is crystal clear that an MCO is absolutely prohibited from limiting what constitutes an emergency medical condition based on lists of diagnosis or symptoms***.

*Id.* at 32-33 (emphasis added). The Arbitrator continued, "[f]ederal law and [Centers for Medicare & Medicaid Services ("CMS")] guidance specifically preclude Medicaid MCOs (such as Anthem) from using diagnosis or symptom codes or lists to adjudicate whether member ED visits are non-emergent." *Id.* at 41. The Arbitrator therefore concluded that Anthem specifically violated federal law, 42 C.F.R. § 438.114. *Id.* at 42.

The Arbitrator awarded the Hospitals liquidated damages in the amount of $3,742,967.68 for Anthem's breach of the Agreements in underpaying the non-exhaustive list of 25,746 individual claims for ED services that the Hospitals identified to Anthem. *Id.* at 43. The Arbitrator also awarded declaratory relief in favor of the Hospitals, finding that Anthem, through its ED Policy, violated federal and state law, as well as the Agreements, as to any and all affected ED claims. *Id.* at 43-44.

The Arbitrator further issued injunctive relief in favor of the Hospitals, specifically prohibiting Anthem from "continuing to engage in and/or employ the ED Policy." *Id.* at 45. The injunctive relief also required Anthem to pay the Hospitals the full contracted rate under the Agreements for all of the Hospitals' other ED claims that were inappropriately downcoded and underpaid, including all ancillary services. *Id.* at 45. The evidence at the final hearing showed that, in addition to the 25,746 claims for which liquidated damages were awarded, there were thousands of other ED claims involving millions of dollars in additional reimbursement impacted by the ED Policy between 2017 and 2021, when the Interim Award was issued. *Id.* at 15. Accordingly, the Arbitrator ordered Anthem to "pay for all of the [Hospitals'] claims that were submitted to [Anthem] as emergent but downgraded/downcoded by application of [Anthem's] ED Policy" at the full contracted rate for emergency services. *Id.* at 45.

The Arbitrator rejected Anthem's counterclaim in full, holding that it was "clear" that requiring submission of medical records with each of the Hospitals' claims for ED services would impose an "unrealistic burden" on the Hospitals and "is specifically precluded according to CMS guidance" and contrary to Indiana law. *Id.* at 30.

**E. The Final Award**

On February 17, 2022, the Arbitrator Issued the Final Award. The Final Award incorporated the Interim Award in its entirety and resolved the Hospitals' motion for interest, costs, and attorneys' fees. *See* Final Award, **Ex. 1** at 2. In the Final Award, the Arbitrator again summarized his findings:

> For claims unaccompanied by complete medical records with primary diagnosis codes not matching codes on [Anthem's] Auto-Pay list, payment of less than the full emergent rate was essentially automatic, improper, and illegal for the reasons set forth in the Interim Award. Moreover, [Anthem's ED Policy] violated the Prudent Layperson Standard for reasons which include automatically down coding/denying emergent claims based upon diagnosis codes, and failing to consider available important and pertinent information, such as a patient's presenting symptoms and conditions when patients sought care and treatment at a provider Emergency Department. . . . ***Further, adoption of a policy based only upon diagnosis codes which effectively denies emergent claims and forces ED providers to appeal the primary diagnosis code denial to obtain the full emergent payment rate, is similarly precluded by applicable law and administrative guidance***.

*Id.* at 9-10 (emphasis added).

The Final Award also contained an award to the Hospitals of $837,455.57 in prejudgment interest on the $3,742,967.68 in liquidated damages awarded as to the 25,746 specifically identified claims, post-judgment interest accruing at a rate of 8% per annum beginning on February 18, 2022, and $4,962.50 in costs. *Id.* at 23. The Hospitals' request for attorneys' fees was denied. *Id.* The Final Award has not been vacated under 9 U.S.C. § 10 or modified or corrected under 9 U.S.C. § 11.

## ARGUMENT

### I. STANDARD FOR CONFIRMATION OF ARBITRATION AWARDS UNDER THE FAA.

Under 9 U.S.C. § 9, "[j]udicial review of arbitration awards is tightly limited." *Standard Sec. Life Ins. Co. v. FCE Ben. Adm'rs, Inc.*, 967 F.3d 667, 671 (7th Cir. 2020) (internal citations omitted). Confirmation is usually "routine or summary, and a court will set aside an arbitration award only in very unusual circumstances[.]" *Id.* "With few exceptions, as long as the arbitrator does not exceed [her] delegated authority, her award will be enforced. This is true even if the arbitrator's award contains a serious error of law or fact." *Butler Mfg. Co. v. United Steelworkers of Am., AFL-CIO-CLC*, 336 F.3d 629, 632 (7th Cir. 2003). Otherwise, "arbitration would just be the first of a series of steps that always culminated in court litigation," *id.*, which would defeat the purposes of arbitration as a more efficient means of resolving disputes.

As noted below, this Court has jurisdiction to confirm the Final Award. The Final Award has not been vacated, modified, or corrected. Accordingly, this Court should confirm the Final Award and enter judgment on it in accordance with 9 U.S.C. §§ 9 and 13.

### II. THIS COURT HAS JURISDICTION TO CONFIRM THE FINAL AWARD.

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) because the Hospitals' claims against Anthem arise under federal law, specifically under 42 C.F.R. § 438.114(d) (prohibiting MCOs from using a list of diagnosis codes to limit what constitutes an emergency medical condition). *See also* 42 C.F.R. § 438.114(a) (defining an "emergency medical condition" with regard to the prudent layperson standard); Requirements Related to Surprise Billing; Part I, 86 Fed. Reg. 36872, 36879-80 (Jul. 13, 2021) ("When a plan or issuer denies coverage, in whole or in part, for a claim for payment of a service rendered in the emergency department. . . the determination of whether the prudent layperson standard has been

met must be based on all pertinent documentation . . . ."). As alleged in the Demand, the Agreements "require that Anthem comply with all applicable federal and state laws and regulations." Demand, **Ex. 5** ¶ 31. By using a list of diagnosis codes to deny the Hospitals' ED claims as "non-emergent," the Hospitals alleged, Anthem "breached the Agreements by failing to comply with applicable federal and state laws in its processing of the [] Hospitals' claims[.]" *Id.*

Anthem disputed the Hospitals' claim. Anthem asserted as an affirmative defense that it "at all times [] was acting in compliance with applicable federal and state Medicaid regulations[.]" Anthem's Answer p. 14, **Ex. 7**. Anthem's position throughout the Arbitration was that federal law (and state law) permitted it to use a list of diagnosis codes to downgrade the Hospitals' ED claims.

Moreover, in the Interim Award, the Arbitrator found that:

> Determination and ultimately resolution of the Claims, Counter-Claims and defenses ***requires understanding of*** . . . ***federal*** and state laws, rules, regulations and importantly, ***CMS guidance*** applicable to the various respective laws, rights, duties, and obligations of the parties[.] Specifically, the resolution of various disputes involves reasonable ***interpretations of the law*** and application of the contract provisions ***governed by laws which address claims payment, performance obligations and mechanisms*** with respect to the three (3) Indiana Medicaid programs administered by Anthem.

Interim Award, **Ex. 2** at 4 (emphasis added). The Arbitrator concluded that the requirements of federal law were "crystal clear" and that Anthem's ED Policy "violates Federal and State law." *Id.* at 41. Specifically, "Federal law and CMS guidance [] preclude Medicaid MCOs (such as Anthem) from using diagnosis or symptom codes or lists to adjudicate whether member ED visits are non-emergent." *Id.*

Thus, the Hospitals' claims against Anthem necessarily involved the resolution of a dispute between the parties over the interpretation of federal law, and that dispute was conclusively resolved in the Hospitals' favor. Accordingly, because the parties' dispute arose under federal law, this Court has subject matter jurisdiction to confirm the Final Award.

**CONCLUSION AND RELIEF REQUESTED**

For the foregoing reasons, Plaintiff Hospitals respectfully submit they are entitled to an order pursuant to 9 U.S.C. § 9 confirming the arbitration award attached hereto as Exhibit 1 and a final judgment on the award pursuant to 9 U.S.C. § 13. Accordingly, the Hospitals respectfully request that this Court issue an order confirming the Final Award and enter a final judgment as follows:

A. Declaring that by employing its ED Policy, Anthem has breached and is continuing to breach the parties' Agreements, as well as federal and Indiana law;

B. Declaring that by employing its ED Policy, Anthem has failed to process and pay for emergency medical services in accordance with the terms and conditions of the parties' Agreements and with the requirements of the Prudent Layperson Standard, and that Anthem has thereby caused the improper denial of a number of the Hospitals' claims submitted for emergency medical services, in violation of federal law;

C. Declaring that Anthem is precluded by law from limiting what constitutes an emergency medical condition based on a list or lists of diagnosis codes;

D. Enjoining Anthem from continuing to employ any practice or policy (including the ED Policy) of using diagnosis or symptom codes to downcode, downgrade and/or pay the Hospitals less than the full emergent rate set forth in the parties' Agreements for ED services provided to Anthem's Medicaid members;

E. Enjoining Anthem from continuing to employ any practice or policy (including the ED Policy) that requires the Hospitals to submit medical records with claims for reimbursement of ED services based on a list of diagnosis codes prior to Anthem reviewing all pertinent documentation in its possession (including claim forms and

relevant medical history) regarding whether the patient had an emergency medical condition;

F. A mandatory injunction ordering Anthem to pay the full emergent reimbursement rate set forth in the Agreements for all the Hospitals' ED claims that were submitted to Anthem for payment but were not paid at the full emergent rate due to Anthem's application of its ED Policy, in addition to those specifically-identified 25,746 claims for which $3,742,967.68 was awarded as liquidated damages for Anthem's contractual breach, including payment in full for all ancillary services attendant to such ED claims;

G. Ordering Anthem to pay interest on all such underpaid ED claims at the rate of eight percent (8%) per annum for the period commencing 21 days after the date of discharge; and,

H. Ordering all other such relief as is just and proper under the circumstances.

Respectfully submitted:

*/s/ Terri L. Bruksch*

Terri L. Bruksch (#20818-49)
BARNES & THORNBURG LLP
11 South Meridian Street
Indianapolis, Indiana 46204
Telephone: (317) 236-1313
Facsimile: (317) 231-7433
E-mail: tbruksch@btlaw.com

**LASH & GOLDBERG LLP**
Miami Tower, Suite 1200
100 Southeast Second Street
Miami, Florida 33131
Tel: 305-347-4040
Fax: 305-347-4050

**ALAN D. LASH**
**(pro hac application forthcoming)**
Florida Bar No. 510904
alash@lashgoldberg.com
**JUSTIN C. FINEBERG**
**(pro hac application forthcoming)**
Florida Bar No. 0053716
jfineberg@lashgoldberg.com
**JASON A. COE**
**(pro hac application forthcoming)**
Florida Bar No. 120551
jcoe@lashgoldberg.com

*Attorneys for Plaintiff Hospitals*